ORDERED.

Dated:  September 29, 2017

Cynthia C. Jackson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

Elizabeth Ann Stephenson,                    Case No. 6:14-bk-08607-CCJ
                                             Chapter 7

      Debtor.
_____/

Elizabeth Ann Stephenson,                    Adv. Case No. 6:14-ap-00152-CCJ


      Plaintiff,

v.

United States of America

      Defendant.
_____/

MEMORANDUM OPINION GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This adversary proceeding came before the Court on the Defendant's Motion for Summary

Judgment (Doc. No. 15; the "Summary Judgment Motion") and Plaintiff's Motion in Opposition

to the Motion and Affidavit of Plaintiff (Doc. Nos. 23 and 29).  Elizabeth Ann Stephenson, the

Debtor and Plaintiff in this proceeding, borrowed monies from the Defendant to pay for tuition and living expenses while attending college. The Debtor asserts that the student loan debt imposes an undue hardship and seeks to discharge the debt pursuant to Section 523(a)(8) of the Bankruptcy Code. The Debtor represents herself in the bankruptcy case and this adversary proceeding. By the Summary Judgment Motion, the Defendant contends that the Debtor cannot prove that the student loan debt imposes an undue hardship based upon the undisputed facts contained in the exhibits attached to the motion.[1] Having considered the pleadings, the argument of the parties, and the record in this case, the Court grants the Summary Judgment Motion for the reasons set forth below.

<u>Facts</u>

The Debtor is a healthy, well-educated single person in her fifties living in Daytona Beach, Florida. She attended Ohio Northern University in the 1980s and earned a Bachelor's Degree in Business Administration. A few years later, the Debtor studied at a massage therapy school and ran a small business as a licensed massage therapist. In 2007, the Debtor attended the Florida College of Integrative Medicine ("FCIM") and within three years, obtained both a Master's Degree and a Doctorate in Oriental Medicine. While attending FCIM, the Debtor borrowed funds from the Defendant in excess of $100,000 (the "Student Loans"). The Debtor used the Student Loans to pay for tuition and living expenses and to study in China at the TCM University of Anhui.

The Debtor has struggled to find lucrative employment in oriental medicine after earning her degrees from FCIM. From 2010 through 2014, the Debtor's adjusted gross income fluctuated between $14,818 and $23,688. During this time, the Defendant granted the Debtor several hardship or administrative forbearances from repaying the Student Loans. The Debtor attempted

to obtain an income based repayment plan from the Defendant, but the new repayment plan never came to fruition.   The Debtor has not made *any* payments on the Student Loans.

On July 29, 2014, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.   The Debtor listed unsecured debts totaling approximately $178,000 in her bankruptcy schedules, and the Student Loan debt is over 75% of the amount listed.   The Debtor then filed this adversary proceeding attempting to discharge the Student Loans pursuant to Section 523(a)(8) of the Bankruptcy Code.

Currently, the Debtor is self-employed as an acupuncturist and massage therapist.   She works regular business hours as an acupuncturist only three days a week and some hours intermittently two days a week as a massage therapist.   The Debtor admits that she is "ready, willing and able to work, with no known medical problems."   The Debtor has not sought employment outside of the field of oriental medicine.   The Debtor estimates that her net monthly income is $1,500.

The Debtor resides in a home owned by her father with her adult son and two grandchildren, whom she started supporting recently.   The Debtor pays rent ranging from $500 to $1,000 per month, when her income allows.   Although the Student Loans presently require a monthly payment of $1,646.66, the Debtor qualifies for three different income driven repayment plans provided by the Defendant for the Student Loans (collectively the "Repayment Plans").   The Repayment Plans cancel the Student Loans debt after a *maximum* repayment period of 25 years. Based on the Debtor's present income and family size, the Defendant estimates that the Debtor's monthly payments could be as low as $49 under the Repayment Plans.   All other living expenses of the Debtor range from $635 to $1,025 per month.   Examples of some expenses or purchases made by the Debtor include: $80 a month for clothing, $100 a month for lawn and garden work,

$80 for a civil war reenactment ticket, $304.94 for a metal detector, and $385 for produce growing equipment.  The Debtor anticipates that her lawn and garden expense will decrease.

<u>Discussion</u>

A court must grant summary judgment where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  The "movant bears the initial burden of showing the court, by reference to the record, that no genuine issues of material fact exist to be determined at trial."[3]  A fact is material if it might affect the outcome of a proceeding.[4]  The dispute of a fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

Once the movant meets its burden of proof, it is up to the non-moving party to show by affidavit or otherwise that a genuine dispute of material fact exists.[6]  The non-moving party does not meet this burden by pointing to disputes not relevant to the issue at hand.[7]  Rather, the non-moving party must identify specific record evidence that defeats summary judgment.[8]  When, as here, the non-moving party has the burden of proof at trial, the moving party must demonstrate a lack of evidence supporting the non-moving party's case to prevail at summary judgment.[9]

Section 523(a)(8) of the Bankruptcy Code provides that a discharge under section 727 does not discharge a debtor's student loan debt unless excepting such debt from discharge would impose an "undue hardship" on the debtor and the debtor's dependents.[10] Because the Bankruptcy Code does not define the term "undue hardship", the Eleventh Circuit Court of Appeals adopted the *Brunner* test to guide a courts' analysis.[11]  The *Brunner* test allows a debtor to discharge student loan debt, only if the debtor proves by a preponderance of the evidence, all of the following:

(1) That the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) That the debtor has made good faith efforts to repay the loans.[12]

A debtor must overcome a high hurdle to prove undue hardship.[13]  A "garden variety" hardship will not suffice.[14] If the debtor cannot prove any one of the *Brunner* test elements, the inquiry ends and the student loan cannot be discharged.[15]  The reason for such a difficult standard is perhaps best explained by the Seventh Circuit:

The decision of whether or not to borrow for a college education lies with the individual; absent an expression to the contrary, the government does not guarantee the student's future financial success. If the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow.[16]

Because the matter before the Court is a Summary Judgment Motion by the Defendant (who carries the initial burden of proof), the Defendant must demonstrate that the undisputed facts prevent the Debtor from prevailing on any one of the *Brunner* test prongs.[17]

The Defendant has shown that the undisputed facts prevent the Debtor from prevailing on the first *Brunner* prongs.  The first element of the *Brunner* test requires a debtor to show that she cannot maintain, based on her current income and expenses, a minimal standard of living for herself and dependents, if required to repay the student loans.[18]  This prong focuses on the debtor's present ability to repay the student loan.[19]  Courts consider the debtor's particular circumstances, such as sources of income, expenses and any available debt restructuring options to determine whether the first prong is met.[20]  A debtor must demonstrate that she has "maximized her ability to produce adequate income" and lives modestly with reasonable

expenses.[21]

Here, the undisputed facts show that the Debtor cannot prove the first prong of the *Brunner* test. The Debtor refuses to maximize her ability to produce adequate income. The Debtor admits that she has not applied for employment outside the field of oriental medicine despite holding a Bachelor's Degree in Business Administration and experience running a small business. Given her education and experience, the Debtor could obtain other full-time employment outside of oriental medicine or acupuncture. The Debtor could supplement her acupuncturist income by obtaining another part-time job with consistent work hours for two additional days a week. There is no evidence that the Debtor's adult son could not contribute to household expenses. In addition, the Debtor is eligible for three different repayment plans for the Student Loans, with a monthly payment as low as $49. The Debtor could easily reduce her lawn or clothing expenses to pay this amount each month. The Court finds that the Debtor has the present ability to repay the Student Loans, but simply fails to expend any effort to obtain a better job or live modestly as required by the *Brunner* test. The Court's inquiry could end here, and the Student Loans be deemed non-dischargeable. For the benefit of the Debtor's understanding, however, the Court will address the remaining *Brunner* test factors.

The Defendant has also shown that the undisputed facts prevent the Debtor from prevailing on the second prong of the *Brunner* test. The second prong of the *Brunner* test requires a debtor to prove that additional circumstances exist demonstrating that this state of affairs is likely to continue for a significant portion of the repayment period of the student loans.[22] This prong looks to the future and focuses on whether the debtor has proven an inability to repay the student loan during a significant portion of the repayment period.[23] Courts consider the continuing benefit of an education with this prong, and require a debtor to demonstrate grim

circumstances such as illness or disability, unusable job skills or care for a large number of dependents, that are likely to exist for a substantial portion of the repayment period.[24]  A debtor does not satisfy the second prong by merely demonstrating employment in a low paying career without much opportunity for improvement (especially when the debtor's education allows for better employment opportunities).[25]  Instead, a debtor must be faced with a "certainty of hopelessness" because the debtor will *never* reap the benefits of the education provided or be able to pay the student loans for reasons *outside* of the debtor's control.[26]  Only a debtor with rare circumstances will satisfy the second prong of the *Brunner* test.[27]

Here, the undisputed facts show that the Debtor cannot prove the second element of the *Brunner* test.  The Debtor does not have any illness, disability, unusable job skills, or any other circumstance outside her control that would prevent continued or future employment.  The Debtor holds several degrees and will retain the continuing benefit of such education until she retires, presumably 10 to 15 years from now.  The Debtor could seek employment with higher earning potential outside the field of oriental medicine.  Although the Debtor may care for dependents, the dependents are not large in number.  The undisputed facts do not demonstrate rare circumstances or the "certainty of hopelessness" required by the second prong of the *Brunner* test.

Finally, the Defendant has also shown that the undisputed facts prevent the Debtor from prevailing on the third element of the *Brunner* test.  The third prong of the *Brunner* test requires the debtor to show a good faith effort to repay the student loans.[28]  This prong reviews the debtor's past conduct to determine if the debtor's actions manifest a good faith effort to repay the student loans.[29]  A court must consider the debtor's efforts to obtain employment,

maximize income and minimize expenses to determine good faith.[30]  Courts may also consider

the debtor's efforts to seek other options with the lender that make repayment of the student

loan less burdensome.[31]  "Where a debtor's student loan debt constitutes a high percentage of

the debtor's total debt, courts have found that the debtor has not made a good faith effort to

repay the loan."[32]

    The undisputed facts show that the Debtor cannot prove the third prong of the *Brunner*

test.  The Debtor's conduct fails to demonstrate a good faith effort to repay the Student Loans.

As discussed above, the Debtor failed to maximize her income or minimize expenses to allow

for repayment of the Student Loans.  The Debtor has not made a single payment to Defendant

for the Student Loans.  The Student Loan debt consists of approximately 77% of the unsecured

debts listed by the Debtor in the bankruptcy schedules.  And what the Court finds especially

troubling in this case, is the Debtor's education and business experience *prior to* obtaining the

Student Loans.  This Debtor was not a naïve high school graduate who was desperate for some

form of higher education.  She already had a degree but chose to borrow $100,000 to get a doctorate

in oriental medicine, including studying abroad in China.  The Debtor should have known that

obtaining student loans in excess of $100,000 would require a significant monthly payment to the

Defendant.   The Debtor appeared intelligent and well-spoken at hearings throughout this case.

The Debtor's single attempt to seek an alternative payment plan from Defendant holds little weight

as to the Debtor's good faith effort to repay the Student Loans after considering all of the Debtor's

conduct.

    The Debtor attempts to defeat the Summary Judgment Motion by arguing (i) the Defendant

should be required to respond to discovery before ruling on the Summary Judgment Motion, (ii)

the Defendant did not establish the amount of the Student Loans and appears to be collecting

"illegal" charges, (iii) the *Brunner* test should not apply, and (iv) the continued accrual of interest and charges on the Student Loans will make payment of the entire amount impossible given her financial circumstances.

The Debtor's arguments fail to present a material dispute as to any fact and fail as a matter of law. First, the Debtor's assertions that discovery must be completed prior to entry of summary judgment does not suffice, when, as here, the Defendant met its initial burden and the Debtor has the burden of proof at trial based on her own circumstances and hardship. Second, the Debtor fails to prove why the Defendant's alleged failure to establish the amount of the Student Loans and alleged collection of "illegal" charges change the analysis of the undue hardship standard or *Brunner* test. The Debtor only requests that this Court determine the dischargeability of the Student Loans in the adversary complaint. The Defendant is not seeking a monetary judgment against the Debtor. This Court makes no determination as to the amount of the Student Loans or whether there are "illegal" charges in the Student Loans debt. The Debtor's ability to contest these issues in the proper forum are not barred by this order. Third, the Eleventh Circuit Court of Appeals has made clear that this Court must utilize the *Brunner* test to determine undue hardship in student loan dischargeability proceedings.[33] Fourth, the Debtor's assertion that the accrual of interest and charges on the Student Loans render payment impossible given the Debtor's financial circumstances is not the "certainty of hopelessness" contemplated by the second prong of the *Brunner* test. Given the Debtor's education and business experience *prior to* obtaining the Student Loans, the Debtor should have known interest would accrue on the Student Loans and the failure to make *any* payments to the Defendant would only increase the amounts owed significantly. Had the Debtor shown some initiative and sought an income-based repayment plan with the Defendant back in 2010, the Debtor would have already completed almost one-third of

the required payment period with minimal monthly payments on the Student Loans.

Conclusion

The Debtor cannot discharge the Student Loans because she cannot meet her burden as to any element of the *Brunner* test. Accordingly, the Defendant is entitled to a judgment as a matter of law. A separate Judgment consistent with these findings and conclusions shall be entered contemporaneously.

Clerk's office to serve

---

[1] The exhibits attached to the Summary Judgment Motion include a copy of the Debtor's deposition transcript, Debtor's answer to interrogatories, Declaration of Ms. Fabila (loan analyst for Department of Education), the loan agreements and Debtor's tax returns.

[2] Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.

[3] *James v. Montgomery Reg'l Airport Auth.*, 181 F. App'x 930, 931 (11th Cir. 2006) (citation omitted).

[4] See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] See *id*.

[6] See *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

[7] See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

[8] See *Cutting Underwater Techs. USA, Inc. v. Erie U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012).

[9] *See Kidd v. Student Loan Xpress, Inc. (In re Kidd)*, 472 B.R. 857, 861 (Bankr. N.D. Ga. 2012) (citing *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004)).

[10] 11 U.S.C. § 523(a)(8).

[11] *See In re Acosta-Conniff*, 686 Fed. Appx. 648 (11th Cir. 2017); *Hemar Ins. Corp. v . Cox, (In re Cox),* 338 F.3d 1238, 1241 (11th Cir. 2003).

[12] *Id.*

[13] See *In re Vuini*, 2012 WL 5554406, *4 (Bankr. M.D. Fla. 2012)

[14] *See id*. *at*4 (citing *In re Brosnan*, 323 B.R. 533, 538 (Bankr. M.D. Fla. 2005)).

[15] *See In re Southard,* 337 B.R. 416, 420 (Bankr. M.D. Fla. 2006); *In re Russotto,* 370 B.R. 853, 856 (Bankr. S.D. Fla. 2007).

[16] *In re Cox*, 388 F.3d at 1241 (quoting *In re Roberson*, 999 F.2d 1132, 1137 (7th Cir. 1993)).

[17] *See Kidd v. Student Loan Xpress, Inc. (In re Kidd)*, 472 B.R. 857, 862 (Bankr. N.D. Ga. 2012).

[18] *See In re Cox*, 388 F.3d at 1241.

[19] *See In re Acosta-Conniff*, 686 Fed. Appx. at 648-49.

[20] *See In re Matthews-Hamad*, 377 B.R. 415, 421 (Bankr. M.D. Fla. 2007)

[21] *See In re Vuini*, 2012 WL 5554406 at *4.

[22] *See In re Cox*, 388 F.3d at 1241.

[23] *See In re Acosta-Conniff*, 686 Fed. Appx. 648, 650 (11th Cir. 2017).

[24] *See In re Matthews-Hamad*, 377 B.R. at 422 (citation omitted).

[25] *See In re Vuini*, 2012 WL 5554406 at *5.

[26] *See id*.

[27] *In re Matthews-Hamad*, 377 B.R. at 422 (citing *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 401 (4th Cir. 2005)).

[28] *See In re Cox*, 388 F.3d at 1241.

---

[29] *See In re Acosta-Conniff*, 686 Fed. Appx. at 649.

[30] *See Kidd v. Student Loan Xpress, Inc. (In re Kidd)*, 472 B.R. 857, 862 (Bankr. N.D. Ga. 2012).

[31] *Id.* at 863. *See also In re Vuini at *6.*

[32] *In re Kidd, 472 B.R.* at 862 (citation omitted)(debtor did not make good faith effort to repay the student loan because she did not actively seek employment, had discretionary expenses, never made a payment on the loan, and the student loan consist of approximately 70% of the debtor's unsecured debts)

[33] See *In re Acosta-Conniff*, 686 Fed. Appx. 648 (11th Cir. 2017); *Hemar Ins. Corp.  v .  Cox, (In re Cox),* 338 F.3d 1238, 1241 (11th Cir. 2003).